```
        IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF GEORGIA
                  ATLANTA DIVISION
```

```
UNITED STATES OF AMERICA       :       CRIMINAL ACTION
                               :
          v.                   :       No. 1:13-CR-292-4-JEC-ECS
                               :
WILLIAM ANGELO MARSH           :
```

**REPORT AND RECOMMENDATION**
**OF THE MAGISTRATE JUDGE**

**I.**

**Introduction**

The above matter is before the Court on the motion of Defendant, William Angelo Marsh, to suppress evidence. [Doc. 22]. The motion came on for evidentiary hearing on October 16, 2013. The transcript has now been filed, [Doc. 97], and Defendant has filed his supplemental brief in support of the motion. [Doc. 106]. The government responded in opposition to the motion. [Doc. 115]. Defendant did not file a reply brief. The motion is therefore ready for a Report and Recommendation to the district judge.

On April 2, 2013, at about 7:20 in the evening, Defendant was pulled over and stopped by Officer Ronnie Viar of the DeKalb County Police Department in the parking lot of the Toco Hill Shopping Center, ostensibly for traffic violations. Defendant was driving a black Nissan Altima automobile. In making the stop, Officer Viar was working with, and at the direction of, the Drug Enforcement

Administration ("DEA") in investigating illegal drug trafficking. During the stop, Officer Viar seized a black bag containing a quantity of cash from the back seat of the vehicle driven by Defendant. Defendant seeks to suppress this evidence and any other evidence seized from the vehicle. The government opposes the motion.

**II.**

**Factual Background**

At the end of March and early April of 2013, DEA in Atlanta was investigating drug trafficking involving several individuals. Several of the targets of the investigation were the subject of wiretaps, including Alfonso Ordaz, Wayne Jones and Malachi Mutakabbir aka "Malley." (T. 9). In essence, DEA had intercepted these individuals discussing and planning the delivery of drugs for distribution in the Atlanta area. Defendant became a subject of the investigation on April 1, 2013, in intercepted telephone calls with Malley in which they were overheard trying to set up a drug purchase by Malley. (T. 12-13, 17).

A series of discussions led ultimately to a plan for delivery of drugs by Defendant to Malley on the afternoon of April 2. Malley did not want to pick up the drugs at the America's Best Value Inn on Candler Road near I-285 and I-20, as proposed by Defendant, so

AO 72A
(Rev.8/82)

Defendant agreed to deliver them to him.[1] (T. 22-23). As a result of this intelligence gathered from the wiretaps, the agents set up surveillance near and around the America's Best Value Inn, expecting Defendant to arrive to pick up the drugs for delivery. Indeed, a black Nissan Altima automobile showed up at the Inn around four o'clock, and its driver, a black male later identified as Defendant, got out, went in to one of the rooms, and emerged with a black bag that he put in the trunk of the Nissan. (T. 33-34, 64-65). Defendant then left the area, followed by law enforcement, stopping at a Popeye's nearby where he was visually identified by the police and his license tag run. (T. 72). After that stop, however, Defendant left the Popeye's and was able to evade the tail. In other words, the agents lost him. (T. 35-36, 55, 67, 74).

The agents continued to monitor the phone conversations over the tapped phones, and they eventually put out a "BOLO" ("Be On The Lookout") for the black Nissan. (T. 42). The phone conversations indicated that Defendant was going to meet Malley at some condos at an address on Logan Circle, presumably with the drugs, at around twenty minutes to seven. (T. 37-38). The agents however, did not get to the Logan Circle location before Defendant had come and gone, (T.

---

[1] The Inn was also mentioned in the intercepts as an Econolodge. America's Best Value Inn at this location was formerly an EconoLodge. (T. 24-25).

39-40), and the agents again lost track of him. (T.55). The BOLO was still in place for the Nissan. (T. 42).

Officer Ronnie Viar with the DeKalb County Police Department was working with Agent Terrance Woodard of the DEA that day, and had been in radio and telephone contact with Agent Woodard during the operation. (T. 71). He knew that the black Nissan was a vehicle of interest to the agents. (T. 71). Indeed he had tried to follow the Nissan from the Popeye's earlier onto the freeway, but was unable to keep it in view. (T.74). By the time Defendant had eluded the officers at the Inn and later at Logan Circle, Officer Viar had stationed himself on the Buford Highway at Northeast Plaza Shopping Center.

At around seven in the evening, Officer Viar was sitting in the middle of the parking lot at Northeast Plaza, watching the cars go by, when he saw what he thought was the black Nissan from earlier in the day. (T. 75-76). He pursued the vehicle and confirmed that the tag on the Nissan was the one that had been given to him for the subject vehicle. (T. 76). He followed the Nissan as it turned left onto North Druid Hills Road and headed east in the direction of the Toco Hill Shopping Center. (T. 76). At about this time, DEA Agent Terrance Woodard also spotted the Nissan, and he spoke with Officer Viar, confirmed that Viar was behind the Nissan, and told him to go ahead and make the stop. (T. 42, 52).

4

Officer Viar observed two traffic infractions, improper windshield tint and failure to maintain the lane, and made the stop in the Toco Hill Shopping Center parking lot. (T. 78). The time was around seven fifteen in the evening. As he was making the stop, Officer Viar observed Defendant reach back and put something into the back seat behind him. (T. 79). He was aware that the case he was assisting on involved narcotics, and this action by Defendant was, to him, suspicious. (T.79). As the officer approached the vehicle and addressed Defendant, he found Defendant nervously smoking a cigarillo, which he also found to be suspicious. (T. 80-82).

Officer Viar then made Defendant get out of the vehicle, and, because Defendant seemed so "aggravated," he patted him down for weapons and handcuffed him. (T. 86, 96). He found no weapons. He placed Defendant in the patrol car and then searched the Nissan and found the black bag with a large amount of cash in it. (T. 86, 90). He found no illegal drugs in the car. Ultimately, Officer Viar issued two citations to Defendant and then let him go on his way, but without the cash in the black bag, which he seized. (T. 93).

### III.

### Issues

Mr. Marsh argues that, under Arizona v. Gant, 556 U.S. 332, 129 S. Ct. 1710 (2009), the officers were not authorized to search Defendant's vehicle without a warrant and, therefore, the seizure of

the cash from the bag behind the seat, after Defendant had been removed from the vehicle and placed in the officer's vehicle, was unconstitutional. The government responds that the search of the vehicle was justified under the "automobile exception" to the warrant requirement, regardless of whether the search was unauthorized under Arizona v. Gant. The government submits that the officer had probable cause to search the vehicle based upon the totality of the circumstances and the collective knowledge of the officers involved in the drug investigation that led to the stop.

**IV.**

**Discussion**

A. Applicable Law

   1. Search incident to arrest.

In Arizona v. Gant, 556 U.S. 332, 129 S. Ct. 1710 (2009), the Supreme Court re-examined the doctrine of search incident to arrest in the context of the search of an arrestee's vehicle. Search of the person was not at issue. The Court limited its prior holding in New York v. Belton, 453 U.S. 454, 101 S. Ct. 2860 (1981), and re-defined the parameters of such searches, finding that the area within which the arrestee might gain possession of a weapon or destructible evidence defines the boundaries of the exception. Gant, 556 U.S. at 341-44, 129 S. Ct. at 1718-19. Ultimately, the Court held that the rationale for such a search authorizes police to search "a vehicle

6

incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." Id. at 343, 351, 129 S. Ct. at 1719, 1723-24. The court further concluded that such a search incident to arrest is also justified "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" Id. at 343, 129 S. Ct. at 1719.

### 2. The Automobile Exception

The "automobile exception" to the warrant requirement allows police to conduct a warrantless search of a vehicle if "(1) the vehicle is readily mobile; and (2) the police have probable cause for the search." United States v. Lindsey, 482 F.3d 1285, 1293 (11th Cir. 2007). The mobility requirement "is satisfied merely if the automobile is operational." Id. (internal quotation marks omitted). Probable cause to search a vehicle "exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." Id. (citation omitted). If the police have probable cause to search an entire vehicle, they may search all compartments, containers, and packages within the vehicle. See United States v. Ross, 456 U.S. 798, 820-21 (1982); see also California v. Acevedo, 500 U.S. 565, 579-80 (1991).

### B. The Law Applied

7

In response to the motion, the government does not argue that the search of the vehicle was authorized under Arizona v. Gant as a search incident to arrest. Instead, the government argues a different justification and submits that the search should be upheld under the automobile exception to the warrant requirement, regardless of whether the search was lawful as a search incident to arrest. [Doc. 115 at 1]. Defendant did not file a reply brief and so did not provide any rebuttal to the government's argument on this point.

I conclude that the automobile exception applies in this case to justify the search and seizure of the bag of currency found in the back seat of Defendant's vehicle. The legality of the traffic stop by Officer Viar has not been challenged, and, indeed, Officer Viar was justified in making the stop based upon his observation of a lane infraction and belief that the window tint on the Nissan was too dark. (T. 77-78). As for the mobility requirement of the auto exception, that requirement is clearly met in this case. Officer Viar stopped a "readily" mobile vehicle that was indeed traveling down a public road. See Lindsey, 482 F.3d at 1293.

The only requirement that bears much discussion is probable cause to search. Probable cause to search a vehicle "exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the

8

vehicle." Id. (citation omitted). "Observations and other information supplied by officers involved in a common investigation can, taken together, create probable cause for a search." United States v. Goddard, 312 F.3d 1360, 1363 (11th Cir. 1986); see also United States v. Wilson, 894 F.2d 1245, 1254 (11th Cir. 1990)("[W]hen a group of officers is conducting an operation and there exists at least minimal communication between them, their collective knowledge is determinative of probable cause.").

In this case, Officer Viar was part of a common investigation by law enforcement of a drug deal that had been developing on the day in question. Based upon evidence from surveillance and intercepted phone conversations, the officers had probable cause to believe that the drug deal was being transacted by a suspect identified as Defendant who was driving a black Nissan bearing the license tag of the vehicle Officer Viar ultimately stopped. More specifically, just before Officer Viar saw the Nissan on Buford Highway and made the stop, the collective knowledge of the officers was that Defendant, in the Nissan, at about twenty minutes to seven, was believed to have been at an address on Logan Circle nearby delivering drugs in exchange for money.

The officers had been unable to follow Defendant to the Logan Circle address, where the rendezvous was to occur, in time to catch Defendant. But the intercepts indicated it was reasonable to believe

9

AO 72A
(Rev.8/82)

that Defendant would still be carrying the proceeds from the deal some twenty minutes later at seven o'clock when the vehicle was again sighted, both by Agent Woodard and Officer Viar, near Buford Highway and North Druid Hills Road. Further, Officer Viar saw the driver of the Nissan put something in the back seat as he was being pulled over, which, along with the driver's nervousness, added to his suspicion that contraband or other evidence of a drug crime would be in the vehicle.

Taking into consideration the totality of the circumstances and the collective knowledge of the investigating officers, I conclude that there was a fair probability that contraband or other evidence of a drug trafficking crime would be found in the vehicle and that Officer Viar had probable cause to search the entire vehicle, including the bag he found in the back seat that contained the large sum of United States currency. See Ross, 456 U.S. at 820-21; Acevedo, 500 U.S. at 579-80. Accordingly, the other requirements for the application of the automobile exception to the exclusionary rule having been established, I conclude that the motion to suppress should be **DENIED**

**V.**

**Conclusion**

In summary, I conclude that Officer Viar was justified in making the stop of Defendant's vehicle. He was possessed of probable cause to believe that Defendant had violated the traffic laws and that the vehicle would likely contain evidence of a drug trafficking crime. Due to the ready mobility of the vehicle, I further conclude that the search of the vehicle was justified without a warrant under the automobile exception to the warrant requirement. The motion to suppress should, accordingly, be **DENIED.**

It appearing that there are no further pretrial or discovery matters to bring before the undersigned, it is therefore **ORDERED** that this **CASE** be and is hereby **CERTIFIED** as ready for trial.

**SO REPORTED AND RECOMMENDED**, this 5th day of March, 2014.

> ***S/ E. Clayton Scofield III***
> E. Clayton Scofield III
> UNITED STATES MAGISTRATE JUDGE